UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KENNETH WILLIAMS,

                              Petitioner,

-against-                                             9:22-CV-1405 (LEK)

CHRISTOPHER S. COLLINS,

                              Respondent.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

On December 29, 2022, Kenneth Williams filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1 ("Petition"). On June 12, 2023, Respondent filed an answer in opposition to the Petition. Dkt. No. 16-1 ("Answer"). For the reasons that follow, the Petition is denied and dismissed in its entirety.

## II.     BACKGROUND

### A. Indictment and Motion Practice

In October 2010, the New York State Organized Crime Task Force ("OCTF") began an investigation into cocaine distribution in various upstate New York counties. Dkt. No. 16-8 at 13.[1] By March 2011, through a series of controlled buys and wiretaps, the OCTF discovered Petitioner's potential involvement in a cocaine distribution ring. *Id.* at 13–15. In June 2011, an Albany County grand jury returned a 278-count indictment against Petitioner and over thirty other individuals regarding narcotics possession and sales from November 2010 to April 2011.

---

[1] Citations to the parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Dkt. No. 16-11 at 178. The indictment charged Petitioner with second-degree conspiracy, two first-degree drug sales, one first-degree and one third-degree drug possession, and Operating as a Major Trafficker. *Id.* at 178.

In October 2011, following the discovery of a jurisdictional issue, the prosecutor re-presented Petitioner's charges to a second grand jury, and, the following month, an Albany County grand jury handed down a revised superseding indictment. *Id.* at 178–79. The superseding indictment charged Petitioner with the same crimes. *Id.* at 179. The trial court then consolidated the revised indictment with the original indictment. *Id.* at 18.

On October 19, 2011, Petitioner moved to, *inter alia*, suppress evidence obtained by wiretaps during the investigation and to dismiss the indictment for insufficient evidence. *Id.* at 17. The trial court denied Petitioner's motion, determining that sufficient evidence existed to support the charges and that the warrant to obtain evidence by wiretap was properly granted. *Id.* at 18–19. Following discovery, Petitioner renewed his motion, again raising his insufficient evidence and suppression claims. *Id.* at 19–20. The trial court again denied the motion. *Id.* at 20.

**B. Trial**

Petitioner, along with Norman Whitehead and two other co-defendants, proceeded to a jury trial in May 2012. *Id.* at 20. The two other co-defendants pled guilty mid-trial in exchange for favorable prison sentences. *Id.* at 20 n.3.

At trial, the prosecution presented evidence from two drug sales, one on February 25, 2011 and one on February 27, 2011, as the basis for Petitioner's charges. A summary of the State's case for each sale is detailed below.

###### 1. *February 25, 2011 Sale*

On February 24, 2011, Petitioner and Whitehead spoke by phone concerning a sale of cocaine. Dkt. No. 16-10 at 426–28. Whitehead sought around 100 grams of cocaine. *See id.* at 428. The following day, Petitioner confirmed he could supply Whitehead with the desired amount, Dkt. No. 16-10 at 430, and the pair agreed that Whitehead would drive from Albany to New York City to pick up the supply. Dkt. No. 16-11 at 184.

That evening, on February 25, Whitehead called Petitioner and told him he was ready to pick up Petitioner's supply. *Id.* A few minutes later, Whitehead called Carl Goodson and informed him that he could sell the product to Goodson that night. *Id*. Whitehead and Goodson arranged to meet at 123rd Street and Third Avenue in Manhattan. Dkt. No. 16-11 at 184; Dkt. No. 16-5 at 220. Goodson testified that Whitehead sold him thirty grams of cocaine. Dkt. No. 16-11 at 184; Dkt. No. 16-5 at 220. Goodson reported that he ingested a portion of the thirty grams and confirmed the product was cocaine. Dkt. No. 16-5 at 220–21. On phone calls on February 26 and 27, Whitehead indicated that he retained about 120 grams of cocaine from the sale. *See* Dkt. No. 16-5 at 446–50.

###### 2. *February 27, 2011 Sale*

On February 26, 2011, Petitioner and Whitehead discussed another sale. *See* Dkt. No. 16-11 at 133–34. Whitehead asked Petitioner if he could supply 300 grams of cocaine by February 27, 2011. Dkt. No. 16-10 at 437–38; Dkt. No. 16-11 at 133–34.

On the morning of February 27, 2011, Petitioner confirmed that he could supply 300 grams of cocaine to Whitehead. *See* Dkt. No. 16-11 at 246. Whitehead revised his order, asking Petitioner to supply 480 grams of cocaine. *Id.* Petitioner agreed. *Id.* Whitehead then called Karashan Mansaray and told Mansaray that he could sell him 500 grams of cocaine later that

day. *Id.* Whitehead and Mansaray agreed that Mansaray would pay $18,500 for 500 grams of cocaine. *Id.* at 186.

Throughout that afternoon, Mansaray collected money from his associates. Dkt. No. 16-11 at 27–28. Whitehead then met Mansaray at Goodson's house, where Mansaray gave Whitehead the money for the purchase. *See id.* at 28. After Whitehead collected the money and left Goodson's house, a member of the OCTF surveilling Goodson's apartment followed Whitehead to Woodbury Common, in Woodbury, New York. Dkt. No. 16-8 at 362. The OCTF investigator testified that Whitehead and Petitioner met there, and Whitehead and Petitioner passed a large object back and forth. Dkt. No. 16-8 at 381–82.

As Whitehead drove back to Albany, he called Mansaray and arranged to meet in Albany to complete the transaction. Dkt. No. 16-8 at 493. Mansaray testified that he received the 500 grams of cocaine from Whitehead. Dkt. No. 16-11 at 28–29.

### 3. Defense

Petitioner called several witnesses to support his theory that he only sold marijuana to Whitehead. The first witness, Frank Piazza, an experienced video forensic analyst, presented enhanced images from the surveillance at Woodbury Common. *See* Dkt. No. 16-5 at 301–14. Piazza testified that the object passed between Petitioner and Whitehead at Woodbury Common was not a plastic bag full of cocaine, as the OCTF investigator testified, but instead a jug, which was consistent with the defense's argument that Whitehead and Petitioner only exchanged a jug of windshield wiper fluid. *See id.* at 311–12. Whitehead's wife, Torey Ronan, also testified that when she retrieved items from Whitehead's impounded car, she found a jug of windshield wiper fluid. Dkt. No. 16-11 at 77–79.

Petitioner's stepfather also testified that on February 27, 2011, he watched Petitioner package marijuana and that Petitioner told him he planned to meet Whitehead at Woodbury Common. *See* Dkt. No. 16-11 at 82–86.

The jury convicted Petitioner on all counts except on the count of operating as a major drug trafficker. Dkt. No. 16-6 at 105–10. On September 6, 2012, the Albany County Court sentenced Petitioner to forty-two years in prison. Dkt. No. 16-9 at 22–23; Dkt. No. 16-8 at 11–12.

### C. Direct Appeal

Petitioner appealed his conviction to the New York Appellate Division, Third Department. Dkt. No. 16-8 at 11–12. In counseled and pro se briefs, Petitioner argued, *inter alia*, that: (1) the verdict was not supported by legally sufficient evidence, or, alternatively, was against the weight of the evidence; (2) the trial court's instructions rendered the conspiracy charge duplicitous under New York state law; (3) the prosecution misstated law in its opening statement making the rest of the trial unfair; (4) the trial court erred in denying Petitioner's motion to suppress evidence derived from the amended and extended eavesdropping warrants; (5) the prosecution engaged in misconduct before the grand jury; and (6) the trial court erred in refusing to issue a lesser included offense charge. *Id.* at 12; Dkt. No. 16-10 at 143.

The Third Department denied Petitioner's appeal. Dkt. No. 16-11 at 245–48. First, the Third Department addressed Petitioner's legal sufficiency claim, stating that Petitioner "did not renew the motion to dismiss at the close of his proof," and, therefore, the issue "is unpreserved." *Id.* at 245. Nevertheless, the court considered the issue because Petitioner also "attack[ed] the verdict as against the weight of the evidence." *Id.* (citation omitted). The Third Department rejected Petitioner's contention that the evidence was not legally sufficient, noting the

prosecution "presented proof of intercepted phone calls, explanations of coded language, movements and actions by [Petitioner] and his coconspirators consistent with planned transactions discussed in their phone calls, and testimony from individuals involved at various levels of the transactions." *Id.* at 246. Based on such proof, the Third Department ruled that "the weight of the evidence supports [Petitioner's] convictions." *Id.*

The Third Department next addressed Petitioner's claims that the trial court erred in denying his motion to suppress evidence from the amended and expanded eavesdropping warrant. *Id.* at 246. Petitioner alleged that the prosecution obtained the eavesdropping warrant "based upon false representations," specifically that the large object passed between Petitioner and Whitehead at Woodbury Common was a plastic bag of cocaine. *Id.* at 246–47. The Third Department rejected this argument, stating that the detective who composed the amended and extended warrant did not make knowingly false or reckless claims when suggesting that the large object was a bag of cocaine. *Id.* at 246–47. The Third Department ruled that the nature of the object "was a factual question for the jury" and the trial court did not err in refusing to suppress evidence garnered from the eavesdropping warrant. *Id.* The court concluded that "even if the statements pertaining to the [large object] in the trunk were excluded [from the warrant], the affidavit's remaining content was sufficient to demonstrate the existence of probable cause." *Id.*

Moving to Petitioner's lesser included offense argument, the Third Department ruled that "[t]here was no evidence for a jury to conclude that a sale or possession occurred, but for a lesser quantity of cocaine." *Id.* Thus, "there is no reasonable view of the evidence which would support a finding that [Petitioner] committed [the] lesser offense but did not commit the greater." *Id.*

The Third Department then summarily rejected Petitioner's remaining contentions, finding the arguments either "unavailing" or identical to previously rejected contentions in Whitehead's appeal. Dkt. No. 16-11 at 247–48.

Petitioner sought leave to appeal to the New York Court of Appeals. *Id.* at 249–53. The Court of Appeals denied leave on August 24, 2016. *Id.* at 259. Petitioner then filed a reconsideration motion, which the Court of Appeals denied in November 2016. *Id.* at 260–62, 266.

### D. State Collateral Appeals

Petitioner filed several state collateral appeals from September 2017 to June 2022. Each is detailed below.

#### 1. First Coram Nobis Motion

On September 26, 2017, Petitioner filed a pro se writ of *error coram nobis*, arguing that his appellate counsel provided ineffective assistance of counsel. Dkt. No. 16-11 at 267. Specifically, Petitioner argued that his appellate counsel was ineffective for foregoing arguments that trial counsel should have: (1) renewed Petitioner's motion for a trial order of dismissal; and (2) requested a circumstantial evidence charge. *Id.* at 277–96. The Third Department summarily denied Petitioner's motion. Dkt. No. 16-12 at 78. Petitioner then sought leave to appeal to the Court of Appeals, which was unsuccessful. *Id.* at 80–83, 86.

#### 2. Second Coram Nobis Motion

On June 17, 2022, Petitioner filed a second pro se *coram nobis* motion in which he argued that appellate counsel acted ineffectively for failing to argue, *inter alia*, that: (1) multiple counts of the indictment were not supported by legally sufficient evidence; (2) trial counsel was ineffective for not objecting to the trial court's handling of a jury note; and (3) the superseding

indictment was facially defective as to venue. Dkt. No. 16-17 at 371–88. On September 8, 2022, the Third Department denied Petitioner's motion in a summary order. Dkt. No. 16-20 at 65. Petitioner unsuccessfully sought leave to appeal to the Court of Appeals. *Id.* at 66–70; Dkt. No. 16-21 at 1–2, 8.

### 3. Motion to Set Aside the Sentence

In March 2018, Petitioner filed a counseled C.P.L § 440.20 motion to set aside his sentence on the ground that the trial court erroneously sentenced Petitioner as a predicate felony offender. Dkt. No. 16-12 at 87–228. On April 26, 2018, the Supreme Court, Albany County granted Petitioner's motion, set aside his sentence, and scheduled a resentencing hearing. Dkt. No. 16-13 at 82–85. At the resentencing hearing, the Supreme Court imposed the original sentence, finding that Petitioner still qualified for an enhanced sentence as a second felony offender based on a 2005 weapon-possession conviction in New York County. Dkt. No. 16-15 at 279–88. The court noted that Petitioner had a pending motion to vacate the 2005 felony conviction and stated that, if the Supreme Court, New York County vacated the 2005 conviction, the court would resentence Petitioner again. *See id.* at 285.

On October 12, 2018, the Supreme Court, New York County vacated the 2005 conviction. Dkt. No. 16-15 at 425–29. The following April, the Supreme Court, Albany County reduced Petitioner's sentence to an aggregate term of twenty-seven to thirty-two years as Petitioner was no longer a second felony offender. *Id.* at 290–313.

In August 2020, Petitioner filed an appeal to the Third Department, arguing his new sentence was excessive. *Id.* at 195–232. The Third Department agreed, reducing Petitioner's sentence to an aggregate term of thirteen to eighteen years. *Id.* at 485–87.

### 4. *Motion to Vacate the Judgment of Conviction*

In 2018, while Petitioner's motion to set aside his sentence was pending, Petitioner also filed a counseled C.P.L. § 440.10 motion to vacate his judgment of conviction, arguing, *inter alia*, that: (1) newly discovered evidence exonerates Petitioner, and, if such evidence was presented at trial, Petitioner would have been acquitted; and (2) the prosecution withheld the full plea agreements with Petitioner's co-defendants in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Dkt. No. 16-13 at 86–125. Petitioner's new evidence comprised of, *inter alia*, several affidavits from Petitioner, friends, and family. Dkt. No. 16-14 at 1–78.

Two affiants offered alibis for Petitioner's alleged actions. Erica Negron submitted an affidavit in which she swore that Petitioner did not leave her apartment on February 25, 2011 from sometime between 9:00 P.M. and 9:30 P.M. until 3:00 A.M. the next morning. *Id.* at 67–68. Shedret Whitehead also submitted an affidavit in which he swore that he was with his younger brother, Norman Whitehead, from 9:30 P.M. until midnight on February 25, 2011, and that the pair never saw Petitioner. *Id.* at 70–71.

The Albany County Court denied the motion. Dkt. No. 16-15 at 7–15. The court first addressed Petitioner's *Brady* claims, finding the claims non-cognizable. *Id.* at 10–11. Nevertheless, the court rejected Petitioner's *Brady* claims on the merits, noting that the documents the prosecution allegedly withheld were "not exculpatory of [Petitioner] and [Petitioner] did, or should, have had knowledge of the [plea] agreements at the time of trial." *Id.* at 11–12.

As to Petitioner's newly discovered evidence claims, the court found that the affidavits from Negron and Shedret Whitehead did not constitute newly discovered evidence, as Petitioner "failed to establish due diligence in obtaining information from a potential witness who was

available at the time of trial." *Id.* at 12. The court also found that none of the affidavits supported a claim of actual innocence. *Id.* at 13.

Petitioner unsuccessfully sought leave to appeal the decision to the Third Department. *Id.* at 18–34, 38. Petitioner then filed a motion for reconsideration before the County Court, which was denied as untimely. *Id.* at 39–108, 188–89. Petitioner again unsuccessfully sought leave to appeal the denial to the Third Department. *Id.* at 192–94.

### 5.  *Second Motion to Vacate the Judgment of Conviction*

In June 2021, Petitioner filed a second counseled motion to vacate his conviction pursuant to C.P.L. § 440.10. Dkt. No. 16-15 at 488–500; Dkt. No. 16-16 at 1–153. Petitioner presented several recycled claims from earlier appeals, a new ineffective assistance of counsel claim, and an affidavit in which Mansaray recanted his trial testimony. Dkt. No. 16-16 at 27–34, 37–40.

The Albany County Court denied the motion. Dkt. No. 16-17 at 332–40. The court first found Petitioner's ineffective assistance of counsel claim meritless. *Id.* at 339. The court also rejected Mansaray's recantation as "unbelievable." *Id.* at 338. In arriving at its conclusion, the court noted that Mansaray's affidavit "merely impeache[d] . . . former evidence" and it was not sufficient to "overcome the presumption of regularity that attaches to judicial proceedings." *Id.* The court then ruled Petitioner's remaining claims lacked merit. *Id.* at 340.

Petitioner sought leave to appeal to the Third Department. *Id.* at 341–53. The Third Department denied Petitioner's request. *Id.* at 370.

### E.  Petition

In the instant Petition, Petitioner seeks to challenge his 2012 conviction by jury verdict. He argues that he is entitled to federal habeas corpus relief because (1) the conviction was not

supported by legally sufficient evidence, Pet. at 6–7; (2) the conspiracy count was duplicitous, *id.* at 8; (3) the prosecution misstated the law at trial, *id.* at 8–9; (4) the trial court erred in denying his motion to suppress, *id.* at 9–10; (5) ineffective assistance of counsel, *id.* at 10–16, 30–34; (6) there were several instances of prosecutorial misconduct, *id.* at 16–28, 34–35; (7) new evidence may have exonerated Petitioner, *id.* at 18–20, 28–30; (8) there was insufficient proof before the grand jury as to venue and his guilt, *id.* at 35–48; and (9) the trial court erred when it instructed the jury that it could consider any of Petitioner's actions "in the Capital Region," *id.* at 43–44. Petitioner seeks a "Certificate of Appealability [] or any other relief to which Petitioner may be entitled." *Id.* at 49.

## III.    LEGAL STANDARD

Under 28 U.S.C. § 2254, a federal district court may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." "In order to obtain relief, an individual in custody must demonstrate, *inter alia*, that he has: (1) exhausted his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal habeas review; and (3) satisfied the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 [] if his appeals were decided on the merits." *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 365–66 (E.D.N.Y. 2013).

## IV.    DISCUSSION

The Court considers each of Petitioner's claims in turn.

### A.  Claim 1 – Conviction Not Supported by Legally Sufficient Evidence

Respondent argues that Claim 1 is barred from federal habeas review by the adequate and independent state ground doctrine. Ans. at 29–30. The Court agrees. Under the adequate and independent state ground doctrine, a claim is procedurally barred in federal court when a "state court's rejection of a federal claim rests on a state law ground—such as the operation of a state procedural rule—that is both independent of the federal question and adequate to support the judgment." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotations omitted). Indeed, federal habeas review is barred "when a state court decline[s] to address a [petitioner's] federal claims because the [petitioner] had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). The claim is barred "if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. 255, 262 (1989). The only exception to this rule is when a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

In Claim 1, Petitioner argues that his conviction was not supported by legally sufficient evidence. This claim was presented to the state courts, and the last state court rendering a judgment in the case, the Third Department, ultimately dismissed the claim on state procedural grounds. *See People v. Williams*, 29 N.Y.S.3d 647 (N.Y. App. Div. 2016). The court held that "as [Petitioner] did not renew the motion to dismiss at the close of his proof [at trial], his argument that the verdict is not supported by legally sufficient evidence is unpreserved [for appellate review]." *Id.* at 649. When a New York state appellate court rejects a claim as unpreserved for appellate review, it qualifies as an "adequate and independent state law ground,

which generally precludes habeas review." *See Rutigliano v. Lamanna*, 19-CV-745, 2022 WL
4348580, at *7 (N.D.N.Y. July 20, 2022).

Moreover, the Court cannot find that Petitioner demonstrated "cause for the default and
actual prejudice as a result of the alleged violation of federal law," nor did Petitioner demonstrate
that this Court's "failure to consider the claims will result in a fundamental miscarriage of
justice." *Colemam*, 501 U.S. at 750. Petitioner's argument that his trial attorney was ineffective
in failing to preserve this claim is unavailing, *see infra* Part IV.E, and Petitioner presents no new
convincing evidence that he is actually innocent, *see infra* Part IV.G. Accordingly, the Court sees
no reason to lift this procedural bar with respect to Claim 1, and it dismisses Petitioner's claim
under the adequate and independent state ground doctrine.

### B. Claim 2 – Conspiracy Count was Duplicitous

Respondent argues that Claim 2 is barred from federal habeas review because Petitioner
failed to comply with the exhaustion requirements. Ans. at 35. The Court agrees. Habeas relief is
unavailable unless a petitioner has "exhausted the remedies available in the courts of the State."
28 U.S.C. § 2254(b)(1)(A). To exhaust their remedies in state court, a petitioner must "fairly
present his [federal] claim in each appropriate state court . . . thereby alerting that court to the
federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotations
omitted).

In Claim 2, Petitioner argues that the conspiracy count was duplicitous. However, a
*federal* duplicity challenge was never presented in state court. While Petitioner did raise a
duplicity argument in state court, it was presented solely in state-law terms; he argued only that
the indictment was deficient because it did not conform to New York state law. *See* Dkt. No. 16-
11 at 224–44. Further, Petitioner omitted this claim from his application for leave to appeal to the

New York Court of Appeals. *Id.* at 249–53. Therefore, because Petitioner failed to present a federal duplicity challenge in state court, the Court finds Claim 2 to be unexhausted.

Ordinarily, when a habeas petition contains unexhausted claims, "it must be dismissed to enable [the] petitioner to exhaust his unexhausted claims or to file a subsequent petition dropping them." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold that claim procedurally barred." *Id.* (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)). A claim is procedurally barred when a "petitioner no longer has 'remedies available in the courts of the State' within the meaning of [Section] 2254(b)." *Id.* (quoting 28 U.S.C. § 2254(b)).

Here, Petitioner can no longer pursue this claim in the state courts. He cannot seek to appeal this claim on direct appeal, because Petitioner has already pursued the one direct appeal to which he is entitled. *See* Dkt. No. 16-8 at 1–70; Dkt. No. 16-10 at 138–170. Further, Petitioner cannot pursue the claim on collateral appeal in state court because the "claim could have been raised on direct [appeal.]" *Grey*, 933 F.3d at 120. Therefore, because Claim 2 is unexhausted and Petitioner no longer has remedies available in state court, Claim 2 is dismissed.

### C. Claim 3 – Prosecution Misstated Law at Trial

Respondent argues that Claim 3 fails because any errors by the prosecution at trial do not amount to misconduct sufficient to grant habeas relief. Ans. at 39. The Court agrees. "[P]rosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute egregious misconduct." *Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003) (internal quotations omitted). To determine if misconduct rises to an egregious level, a court must assess the alleged misconduct "in the context of the entire trial." *Donnelly v. DeChristoforo*, 416 U.S. 637, 639 (1974). "The relevant inquiry, therefore, is whether the prosecutor's conduct 'so

infected the trial with unfairness as to make the resulting conviction a denial of due process."
*Sheard v. Lee*, No. 18-CV-2125, 2019 WL 5847151, at *6 (S.D.N.Y. Oct. 7, 2019) (quoting
*Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

In Claim 3, Petitioner argues that the prosecution misstated the law at trial, specifically
when the prosecutor discussed the legal definition of the world "sale" in the opening statement.
The Court finds that the prosecutor accurately discussed the legal definition of a "sale" under
New York state law, *see* C.P.L. § 220.00(1), and that the prosecution made sufficiently clear that
its statement was not meant to be a definite statement of law. Further, the prosecutor sufficiently
communicated to the jury that the trial court judge would provide the final instructions on the
law for the jury to consider. The trial court judge also made clear to the jury that it must accept
the law only as stated by the court. *See* Dkt. No. 16-3 at 270. Accordingly, the Court cannot find
that the prosecutor's acts amounted to "egregious misconduct," such that the trial was "infected"
with unfairness. *See Sheard*, 2019 WL 5847151 at *6. Claim 3 is dismissed.

### D. Claim 4 – Trial Court Erred in Denying Motion to Suppress

Respondent argues that Claim 4 fails because the Supreme Court's holding in *Stone v.
Powell* bars review. 428 U.S. 465 (1976); Ans. at 41. The Court agrees. In *Stone*, the Supreme
Court held that "where the state has provided an opportunity for full and fair litigation of a
Fourth Amendment claim, . . . a state prisoner [is not entitled to] federal habeas corpus relief on
the ground that evidence [was] obtained in an unconstitutional search and seizure." 428 U.S. at
482. Indeed, habeas review of Fourth Amendment search and seizure claims may only proceed if
"the state has provided no corrective procedures at all to redress the alleged [F]ourth
[A]mendment violations" or "the state has provided a corrective mechanism, but the [petitioner]

was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

In Claim 4, Petitioner argues that the trial court "improperly denied [his] motion to suppress eavesdropping evidence." Pet. at 9. Because this claim is predicated on an alleged Fourth Amendment search and seizure violation, it is barred by *Stone* unless Petitioner can demonstrate that either exception in *Capellan* is met. He cannot. First, Petitioner does not contend that the New York courts failed to provide him with corrective procedures to redress the alleged violation. In fact, "federal courts have approved New York's procedure for litigating Fourth Amendment claims," *Capellan*, 975 F.2d at 70 n.1, and Petitioner has availed himself of these avenues. *See* Dkt. No. 16-8 at 125–26, 131–32. Second, Petitioner does not contend, nor does the record reflect, that there was an unconscionable breakdown in the state's corrective procedures. Indeed, Petitioner received an opportunity to challenge the admission of the eavesdropping evidence on direct appeal. *See id.* at 1–70, 125–26. Accordingly, because Claim 4 is precluded by *Stone* and otherwise unable to proceed under *Capellan*, Claim 4 is dismissed.

### E.  Claim 5 – Ineffective Assistance of Counsel

Respondent argues that Claim 5 fails because Petitioner's counsel was not ineffective under the standards set forth in *Strickland v. Washington*. 466 U.S. 668 (1984); Ans. at 38–39. The Court agrees. To succeed on a claim of ineffective assistance of counsel, a petitioner must show that: "(1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland*, 466 U.S. at 688, 694). The claim "must be rejected if the [petitioner] fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

To satisfy the performance prong in *Strickland*, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Such errors must include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (cleaned up). Upon review of an ineffective assistance of counsel claim, courts must be "highly deferential" and approach the analysis with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

To satisfy the prejudice prong in *Strickland*, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Courts must look to the "cumulative weight of error" to determine whether any potential prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001). "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 694.

In Claim 5, Petitioner argues that counsel failed to (1) renew the motion to dismiss at the close of evidence; (2) request a circumstantial evidence charge; (3) investigate the case and present alibi witnesses; (4) adequately cross-examine Mansaray; and (5) introduce certain calls between Mansaray and others. The Court addresses each contention in turn.

*1.   Failure to renew the motion to dismiss at the close of evidence*

Petitioner contends that trial counsel should have moved to dismiss the prosecution's case at the close of evidence because the prosecution failed to prove that Petitioner sold the weight of cocaine necessary to satisfy C.P.L. § 220.43(1). Pet. at 10–12. This contention does not satisfy *Strickland*'s prejudice prong. The jury at trial, the Third Department, and numerous state courts on collateral appeal found that the evidence presented at trial was sufficient to find that the weight requirement of C.P.L. § 220.43(1) was met. Thus, the Court holds that the trial counsel's decision not to renew the motion to dismiss did not prejudice Petitioner. Petitioner's first contention is dismissed.

*2.   Failure to request circumstantial evidence charge*

Petitioner next contends that trial counsel acted ineffectively when it failed to join Whitehead's defense counsel in requesting a wholly circumstantial evidence charge. Pet at 12. This contention also fails under *Strickland*'s prejudice prong. The trial court rejected Whitehead's circumstantial evidence charge, and there is nothing in the record to indicate that the trial court would have ruled differently if Petitioner's counsel had argued the same. As such, the Court finds that the trial counsel's decision to not pursue such a charge was harmless. Petitioner's second contention is dismissed.

*3.   Failure to investigate the case and present alibi witnesses*

Petitioner also contends that trial counsel failed to sufficiently investigate the case for potentially helpful evidence and failed to present alibi witnesses at trial. Pet. at 14–16, 30–31, 33–34. The Court is dubious of Petitioner's claims for several reasons. For one, the trial court convicted Petitioner in 2012, but Petitioner did not notify any court of any potential alibis until Petitioner filed a collateral appeal in 2018, nearly six years later. Petitioner offers no credible

explanation for this delay, and the Court cannot determine why, if Petitioner knew of potential alibis, he would wait six years to present them before a court. Further, Petitioner is inconsistent as to whether he raised the existence of an alibi to his counsel at trial. In the instant Petition, Petitioner states that he told counsel of the potential alibis during their first interview together. Pet at 14–15, 33. However, in his 2018 collateral appeal, he makes no claim that his trial counsel was aware of the alibis. *See* Dkt. No. 16-13 at 86–125. Because of Petitioner's delay and the inconsistencies with respect to the existence of any potential alibis, the Court is skeptical of the veracity of Petitioner's claims. The Court does not find that trial counsel acted unreasonably by not investigating or presenting potential alibis when there is no evidence of any, besides the statements from Petitioner himself. Accordingly, Petitioner's third contention is dismissed.

### 4. *Failure to adequately cross-examine Mansaray*

Petitioner contends that trial counsel failed to adequately cross-examine Mansaray at trial. Pet. at 14–15, 30–31. This contention fails under *Strickland*'s performance prong; the trial counsel's performance was not objectively deficient. Whitehead's counsel vigorously cross-examined Mansaray on behalf of both Petitioner and Whitehead. Dkt. No. 16-5 at 108–72. During cross-examination, Whitehead's counsel elicited that Mansaray was a career drug-dealer, was motivated to testify by a favorable cooperation deal, that he had lied to investigators after his arrest, and that he knew Whitehead as a marijuana dealer. *Id.* Petitioner's trial counsel did not need to duplicate Whitehead's counsel's initial cross-examination, especially given its vigor. Further, Petitioner's trial counsel participated in the re-cross examination of Mansaray, eliciting that Mansaray only met Petitioner in a chance encounter. Dkt. No. 16-5 at 176–77. Accordingly, Petitioner's fourth contention is dismissed.

5.   *Failure to introduce certain calls between Mansaray and others*

Petitioner also contends that trial counsel was ineffective by failing to introduce certain intercepted calls from Mansaray at trial. Pet. at 30–32. Specifically, Petitioner argues that counsel should have introduced Calls 1767, 1239, 1768, 1770, 1252, and 1259 into evidence. At the outset, Calls 1767, 1239, 1768, and 1770 were introduced into evidence by the State. Dkt. No. 16-10 at 441–43. A transcript of Call 1252 was available to the jury as well. Dkt. No 16-16 at 206. Because these calls were in evidence, trial counsel cannot have been deficient for failing to introduce them.

While Call 1259 was not introduced into evidence, the Court finds that trial counsel's failure to do so was not prejudicial to Petitioner. Call 1259 was a conversation between Mansaray and another co-conspirator, which revealed that Mansaray was in possession of cocaine prior to receiving cocaine from Petitioner. *See* Dkt. No. 16-16 at 206. While Petitioner argues this is exculpatory evidence, proving that Mansaray did not buy cocaine from Petitioner, the Court finds this evidence immaterial to Petitioner's guilt. Nothing from Call 1259 proves that Mansaray did not buy cocaine from Petitioner as well. Accordingly, the Court finds that trial counsel's failure to introduce this call into evidence did not prejudice Petitioner. Petitioner's fifth contention is dismissed.

Because all five of Petitioner's contentions of ineffective assistance of counsel are dismissed, Claim 5 is dismissed.[2]

---

[2] Petitioner also argues that trial counsel was ineffective because of the cumulative effect of all of counsel's errors, and appellate counsel was ineffective for failing to raise any of the ineffectiveness arguments listed above on direct appeal. Pet. at 13–14. Because the Court finds each contention listed above meritless, these arguments are similarly rejected.

## F.  Claim 6 – Prosecutorial Misconduct

In Claim 6, Petitioner argues that the State suppressed favorable evidence and failed to disclose certain evidence at trial. Pet. at 16–28. Petitioner also argues that the State induced perjury from Mansaray at trial. Pet. at 20. Respondent argues that Claim 6 fails because each of Petitioner's claims of prosecutorial misconduct are meritless. Ans. at 44. The Court agrees.

### 1.  *Brady violation*

Petitioner argues that the State failed to disclose the complete terms of Mansaray's plea agreement, and thus withheld important impeachment evidence. In *Brady v. Maryland*, the Supreme Court held that the prosecution has a constitutional duty to disclose exculpatory evidence to a criminal defendant. 373 U.S. 83 (1963). To prevail on a *Brady* claim, a petitioner must show "(1) that the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006) (cleaned up). Minor prejudice is not enough; one must show a "reasonable probability of a different result if the defense had learned of the evidence." *United States v. Romero*, 54 F.3d 56, 61 (2d Cir. 1995) (internal quotations omitted).

Here, Petitioner contends that as part of Mansaray's plea agreement, the prosecution promised to return a seized 1999 BMW and remove a *lis pendens* off a piece of real estate in exchange for testimony at Petitioner's trial. Pet. at 16–19. Petitioner is incorrect; the record is clear that at the time of Mansaray's guilty plea, the prosecution had not promised Mansaray the return of his property. *See* Dkt. No. 16-16 at 192–93 (where Mansaray's counsel acknowledges that at the time of Mansaray's guilty plea, the "monetary settlement issue is open"). Further, even if the property were a part of the plea bargain, the Court finds that this impeachment evidence

would not have created a reasonable probability of a different result at Petitioner's trial. Mansaray was forcefully impeached by Whitehead's counsel, with testimony that Mansaray had lied previously, was a convicted drug dealer, and that he testified to avoid a long jail sentence. Dkt. No. 16-5 at 108–72. The Court is skeptical that one more piece of impeachment evidence would have impacted the jury's perception of Mansaray's credibility.

Accordingly, because Petitioner's claim is inaccurate and any such evidence would not have created a reasonable probability of a different result at Petitioner's trial, the Court finds that no *Brady* violation occurred.

To the extent that Petitioner also argues that the prosecution committed a *Brady* violation because it failed to timely disclose five intercepted calls from Mansaray's phone, Pet. at 25–26, Petitioner appears to misunderstand the record. The record reflects that the prosecution sent Petitioner's trial counsel a disc containing all relevant calls on October 5, 2011, over six months prior to Petitioner's trial. Dkt. No. 16-16 at 160. Accordingly, the Court finds there to be no *Brady* violation here, either.

### 2. *Perjury*

Petitioner argues that the State coerced Mansaray into providing false testimony and failed to correct Mansaray's false testimony about his plea deal. Pet. at 20–22, 25–26. As proof, Petitioner points to Mansaray's January 2020 affidavit, in which Mansaray swears that law enforcement required him to lie about the actions of Petitioner and Whitehead to avoid a maximum sentence and promised to return Mansaray's property if he testified falsely. *See* Dkt. No. 16-16 at 37–40.

Witness recantations are "looked upon with the utmost suspicion." *Tirado v. Senkowski*, 367 F.Supp. 2d 477, 490 (W.D.N.Y. 2005) (cleaned up). Before a court can grant relief "on the

basis of recanted testimony, a petitioner must demonstrate . . . . the recanted testimony [is] material . . . [and] reliable." *Collado v. Mazzuca*, No. 05-CV-4884, 2007 WL 2323589, at *4 (E.D.N.Y. Aug. 10, 2007). To succeed on such a claim, a "petitioner bears a heavy burden." *Id.* (internal quotation marks omitted).

Here, the Court finds Mansaray's affidavit to be wholly unreliable. For one, the affidavit comes nearly eight years after the relevant events and is directly contradicted by intercepted phone calls presented at trial. Further, outside of the statements from Mansaray himself, Petitioner presents no evidence that Mansaray perjured himself at trial. Mansaray's affidavit, on its own, is insufficient to satisfy the "heavy burden" required to accept recanted testimony. As such, the Court finds Petitioner's perjury claim to be without merit.

Because the Court finds that the prosecution neither committed a *Brady* violation nor coerced perjury from a witness, Claim 6 is dismissed.

### G. Claim 7 – New Exculpatory Evidence

Respondent argues that Claim 7 is non-cognizable. Ans. at 54. The Court agrees. "The law is clear that the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Israel v. New York*, No. 16-CV-8541, 2020 WL 3643046, at *21 (S.D.N.Y. Feb. 4, 2020) (quoting *White v. Keane*, 51 F. Supp. 2d 495, 502 (S.D.N.Y. 1999)). Rather, "the newly discovered evidence must be so compelling that it would be a violation of the fundamental fairness embodied in the Due Process Clause not to afford a defendant a new trial at which the evidence could be considered." *Id.* (cleaned up).

In Claim 7, Petitioner argues that he possesses two new pieces evidence that can prove his innocence at trial and demonstrate *Brady* and due process violations. The first is Mansaray's affidavit. Dkt. No. 16-16 at 37–40. The Court has already found this affidavit to be wholly

unreliable, such that it is not sufficiently compelling to find a due process violation. *See supra* Part IV.F.2. The second piece of evidence is "[d]ocuments [that] show Mansaray did not own the property that [Respondent] claim[s] he forfeited." Pet. at 18. Petitioner argues that because Mansaray did not own the property that he later possessed, the prosecution gave Mansaray a "benefit for his cooperation at trial." *Id.* To the extent that Petitioner has such evidence in his possession, he did not file it with the Court in connection with his Petition, nor can the Court find any evidence in the record to support Petitioner's claim. With only Petitioner's allegations of the existence of such documents, the Court cannot find that such newly discovered evidence actually exists. Accordingly, Claim 7 is dismissed.

### H.  Claim 8 – Insufficient Proof Before Grand Jury Regarding Venue and Guilt

Respondent argues that Claim 8 is non-cognizable because there is no federal constitutional right to a grand jury in state criminal proceedings. Ans. at 55. The Court agrees. "Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." *Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002). In Claim 8, Petitioner raises exactly that, arguing that his state grand jury proceedings were defective. Accordingly, Claim 8 is dismissed.

### I.  Claim 9 – Faulty Jury Instructions

Respondent argues that Claim 9 fails because it is unexhausted and procedurally barred. Ans. at 62. The Court agrees. As discussed *supra* Part IV B., habeas relief is unavailable unless a petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To exhaust their remedies in state court, a petitioner "must fairly present his [federal] claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29. An unexhausted claim is procedurally barred and must be

dismissed when a petitioner "no longer has remedies available in the . . . state courts." *Grey*, 933 F.2d at 121

In Claim 9, Petitioner argues that the trial court incorrectly instructed the jury to consider whether Petitioner committed crimes in the "Capital Region," instead of "Albany County." However, Petitioner never presented this jury instruction challenge while pursuing his direct appeal. *See* Dkt. No. 16-8 at 1–70. Therefore, Petitioner never "fairly present[ed]" the jury instruction challenge in the proper state court, and, as such, this Court finds that Claim 9 is unexhausted.

Claim 9 is also procedurally barred. Here, Petitioner cannot seek to appeal this claim on direct appeal, because Petitioner has already pursued the one direct appeal to which he is entitled. *See* Dkt. No. 16-8 at 1–70; Dkt. No. 16-10 at 138–170; *see also* N.Y. Court Rules § 500.10(a). Further, Petitioner cannot pursue the claim on collateral appeal in state court because the "claim would have been raised on direct [appeal.]" *Grey*, 933 F.3d at 120. Therefore, because Claim 9 is unexhausted and Petitioner no longer has remedies available in state court, Claim 9 is dismissed.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the petition for writ of habeas corpus, Dkt. No. 1, is **DENIED and DISMISSED in its entirety**; and it is further

**ORDERED**, that the Court declines to issue a Certificate of Appealability because Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     May 29, 2025
           Albany, New York

LAWRENCE E. KAHN
United States District Judge